19-148. We have Mr. Fiengo, is that correct? Hello? Can you hear me, Your Honors? Now, yes. Okay, Brian Fiengo for Mr. DeCesare. DeCesare, okay, very good. Thank you very much. You may proceed. Thank you, Your Honors. The plaintiff appeals several rulings contained in the trial court's decision on summary judgment. First, the trial court erred in granting summary judgment in favor of the defendant as to the plaintiff's claim of violation of his due process rights involving both his liberty and property interests. As to both claims, the court misapprehended the factual record and applied erroneous legal standards. Second, the trial court erred by finding conclusively that an ethics violation raised by the plaintiff was not an issue of public concern. There are perhaps few topics that reflect upon the public trust more than the impropriety of municipal employees. The motivation for the speech then should have become a question for the jury. Third, the trial court erred by finding once again conclusively that no inference of retaliatory intent could be drawn from adverse actions taken against Mr. DeCesare after his exercise of family medical leave. More particularly, the court exceeded the scope of its review by flat ignoring eight adverse actions which occurred after his family medical leave. Fourth, the trial court abused its discretion by disallowing a straightforward request to supplement the summary judgment record after by inadvertence such items were not included. The supplemental records were exchanged during discovery, they were long known to the parties, they were argued during the hearing, and they caused no prejudice or delay. Finally, the court erred in finding moot the plaintiff's motion to compel disclosure of communications from defendants' labor counsel as it had been conclusively established that labor counsel became the human resources person for the town and was primarily responsible for the disciplinary decisions involving the plaintiff. In-camera review would have struck a perfect balance between honoring the privilege under those circumstances but lifting the privilege should the court have determined the existence of some illicit intent. Back to the due process. In this circuit, the plaintiff is entitled to notice of the specific charges against them, an explanation of the evidence against them, and a meaningful opportunity to contest. The court found due process satisfied primarily due to its misapprehension of fact where it found that the lengthy termination memo with charges and an explanation of evidence was provided to the plaintiff prior to the meeting with Ms. MacKrell. It is unequivocal in the factual record that this memorandum was never provided to the plaintiff until after he was officially terminated. Let me ask you a question about that, please. So I guess all the parties agree that the district court misunderstood the order of events and that all that your client got on the morning of April 30th was the notice of right to representation that just says we're going to meet and I'm going to give you an opportunity to explain your deficiencies. Is that correct? That's correct. Okay. And then, you know, the district court relied on the so-called MacKrell questions. And I noted that these questions that were in fact discussed at the meeting refer largely to things that have been the subject of back and forth between your client and Barbara MacKrell for really since she began but also since she kept asking him things like providing daily worksheets and tallying up who had been where when and supervising the crew, you know, the catch basin and Elk Ridge Road incidents and so on. None of this was going to come as a surprise to him. And so while technically it may be that he should have received the list at the start of the meeting or the day before the meeting with evidence supporting all of this, wasn't all of this something that they had been discussing for quite a long time? Can you point to anything that came as a surprise to him? Yes, Your Honor. In terms of a chronology first with respect to surprise, Mr. DeCesar had been out of work from January, late January 27th until his return in March. There was no conduct that occurred during that period. That's not what I'm talking about. I mean, he took his FMLA leave. But all of the issues, the catch basins installation, his failure to provide the daily worksheets, the first week of employee timesheets in April after he came back, the question of being work without leave and, you know, this had happened since his return. I mean, these were recurrent issues over a long time. And regardless of his leave, his FMLA leave, which I don't really see any, you know, evidence that it was retaliation for his FMLA leave. These other management issues had been recurring and have been quite specified by Ms. MacKrell, it seems to me. So I'd like you to point to what came as a surprise to him in the matters that ultimately were discussed in the meeting and that were the cause for termination. Thank you. The appellant strongly urges the court to consider that he was never, Mr. DeCesar was never disciplined, not even warned for issues with regard to timekeeping or keeping track of and this is a union employee, not even a written warning. And he wasn't suspended for purposes of that, Your Honor. In addition to that, the nature of the... Excuse me, are you saying that he was unaware that they were an issue of his, from his supervisor, or just that he had not been formally advised that it was an issue? Well, in terms of matching it to the factors of notice of the charges against him that could lead to his termination, Your Honor, I would say that Mr. DeCesar was sitting in a position going into that meeting where he never had noticed prior to the idea that the town was going to utilize timekeeping as a reason for his discharge. He certainly wasn't warned of that in any material way in terms of written warnings or progressive discipline. In fact, that morning was the first time he was even asked specific questions about it. He certainly wasn't, they didn't levy charges. If you look at the nature of Ms. MacKrell's questions, and I anticipated that this would come up, she's fishing and she's investigating, for instance, she's asking open-ended, did you have any discussions with Mr. Santos? That's relevant because the nature of the question is investigatory. In her hands, she had, prior to this meeting, a statement from Mr. Santos regarding certain items that she was claiming that Mr. DeCesar had violated in terms of town policies, but didn't provide it. Similar to the Otero case, where the municipal entity in Otero had evidence, had statements, had an investigation that they withheld from the proponent and simply said to them, you've engaged in misconduct. Ms. MacKrell did the same thing here. She was making a general statement to him through these questions, but levied no specific charges. It's the withholding of the charges and explanation of evidence, which marries this case on all fours with the Otero case because the town had clearly done some work, which they claimed supported discharge. The only problem was they wouldn't provide it to Mr. DeCesar in order to give him a fair hearing at that point. The very nature of the questions, I would urge your honor to consider, were investigatory rather than levying charges, which is the requirement in this particular circuit. In addition, I would also urge the court to consider that there were only 20 days of work, roughly, when Mr. DeCesar returned from FMLA. During that period of time, he was a long-term employee, double-digit years, had served in his current position for five and a half years without any issues or disciplinary matters whatsoever, and he has 20 days in return to work where he's forced into a meeting without facing specific charges or an explanation of evidence. It wouldn't have been difficult. There was certainly no government interest in withholding the prior investigatory work that they did. Simply providing it to Mr. DeCesar that morning to give him an the pre-deprivation due process that was necessary, at least under our circuit. Let me ask you this. Are we entitled to take into consideration the fact of the arbitration proceedings and the result of those proceedings? The court's not entitled to that because it occurred after the summary judgment decision and wasn't a part of the summary judgment record. It is the plaintiff's strong position, the appellant's strong position, that that's off-limits for consideration at this point. One other question before we let you sit down, as it were. What evidence in the record do you point to to tie his termination to his having taken FMLA leave? There are eight instances that are described in the complaint that occurred from the moment he requested protective leave until his termination. The eight items, just very specifically, are... I don't want you to go through eight items in the brief. I was having difficulty with in what way there was any reflection that the action was taken because he took the FMLA leave. I thought there was just one email pointed to that Ms. McCrell had written that criticized somebody else for giving him credit for having helped deal with a bad snowstorm when he was out. Is there anything else? Yes, there's eight instances. The court in the plaintiff's view narrowed the plaintiff's claims for actions which occurred in retaliation for FMLA. Specifically, the town took away his car before his return. The vehicle that he had changed his office from the highway department to the town, making his job more difficult. A change in working conditions has been recognized as retaliatory or potentially for an adverse inference. None of them were adverse work, adverse employment actions. I mean, the car they've explained was Ms. McCrell's. The office change was maintained afterwards and had efficiencies. I mean, not like taking away leave or another more typical adverse employment action. The highway department submitted affidavits. In particular, Joe Curioso indicated that during the period of his leave in January of 2015, the affidavit was in February. The highway department had never been run better. It's smooth. Employees are happy. It's more efficient. The work environment is better. They were essentially assassinating his character while he was on leave. Now, he's entitled to reinstatement when he comes back after FMLA leave, which indicates or should draw an inference that he's not welcome. He's not welcomed back by his subordinates, and they're communicating this to the top decision makers of the town. A more direct inference of discrimination or retaliation can't possibly be made. The town had no purpose, and Ms. McCrell testified as much. She had no business purpose for the affidavits that were sought out from highway department personnel. They were sought out for the specific reason of trashing his character while he was on leave. I had explained and argued that they were gratuitous in nature because there wasn't a business purpose to them other than to assassinate his character. It would be hard... Okay. All right. Mr. Fango, you've reserved two minutes for rebuttal. Thank you, Your Honor. Okay. Thank you very much. Mr. Dolan. Thank you, and good morning, Your Honors. May it please the court. This is Jack Dolan on behalf of the defendant of Pelley's Town of Stonington and Barbara McCrell. This matter is simply a case of a new supervisor, Ms. McCrell, coming in with a different direction than the previous supervisor and one subordinate, Mr. DeCesar, who chose not to follow that direction time and time again, despite being asked to do no more than what was contained in his job description. The 14-month period that Ms. McCrell was Mr. DeCesar's supervisor is littered with examples that exhibit his poor job performance, his insubordination, his inadequate planning, and his lack of credibility. And each of those are outlined in detail in the record before the court. And it's that poor job performance and insubordination that provide the town's legitimate and non-retaliatory reasons for his termination. Could you please, Mr. Dolan, could you please address the notice question? I gather that you agree that the district court was mistaken in understanding that the McCrell questions, so called, the eight questions, were provided to Mr. DeCesar before the termination meeting was held. And in any event, these are questions and they don't provide or set forth the evidence that the town relied on in the termination. All that he received was the April 30th Notice of Right to Representation letter. Could you explain why that is adequate notice and adequate notice of the evidence that the town would rely on in this termination? Yes, Your Honor. Our Supreme Court has stated that due process is not fixed, but it's flexible and calls for such procedural protections as the particular situation demands. And this court recently in Tooley v. Schwaller stated that no case has established that the requirements and procedures of a Loudermill hearing are to be provided in any particular manner or form, and that no case has established that the procedures required by Loudermill cannot be provided at the Loudermill hearing itself. When considering this particular situation and the facts of this specific case, the court should affirm the district court's decision because the town afforded Mr. DeCaesar notice and an opportunity to be heard before he was terminated. Let me interrupt for a minute. The letter just says we're going to give you an opportunity to explain your deficiency. I don't really understand how that could be seen as notice of particular charges or a description of the evidence that the town would use in support of its termination. You're saying that it was enough that it was discussed at the termination hearing itself. Is that right? That's correct, Your Honor, and Loudermill does not provide that the notice must come before the hearing itself, and that's what the decision in Tooley v. Schwaller, which is 919 Ed 3rd 165, it's a 2019 decision, states that the notice does not have to come before the hearing itself, but that they can actually be provided during the hearing. So Mr. DeCaesar was provided with a memorandum that directed him to report to Mrs. McCrow's office for the purpose of discussing her intention to terminate his employment and to provide him with an opportunity to explain his job deficiencies. So he went into that hearing knowing full well that they were going to be discussing his job deficiencies and that it may ultimately lead to his termination. At the hearing, he had union representation in the form of... Excuse me. Did he know going into that hearing what deficiencies were at issue? Yes, he did, Your Honor. None of the topics were new to Mr. DeCaesar. He was well aware of each of these topics because Ms. McCrow routinely discussed them with Mr. DeCaesar. She held weekly meetings with Mr. DeCaesar from the time that she started as the Director of Public Works. Constant topics during these meetings included his failure to complete daily work plans, his failure to properly and to timely review timesheets, his failure to perform inspections at the end of each workday, and these were all issues that he was ultimately terminated for. When he returned from his suspension, so he was suspended in January of 2015, when he returned after taking almost two months of medical leave, Ms. McCrow had a meeting with him and provided him with a work schedule that specifically allotted time each day for him to perform the inspections each day, to complete those daily work reports, to review the time were. So it's disingenuous for Mr. DeCaesar now to claim that he had no notice and to feign ignorance as to what the purpose of the hearing was or that he did not know what his perceived job deficiencies were. Despite his knowledge of each of these topics, he chose not to provide Ms. McCrow with any information or explanation regarding each of those job deficiencies. The purpose of a Loudermill hearing is to serve as an initial check against mistaken decisions. Mr. DeCaesar did not attempt to rebut any of the charges against him as it related to his job performance or his insubordination. His brief doesn't attempt to rebut any of those job deficiencies. And this court has made clear that procedural due process is satisfied if the government provides notice and a limited opportunity to be heard prior to the termination, so long as a full adversarial hearing is provided afterwards, which is exactly what we have in this case. And this case is factually similar to Naramonti versus Board of Trustees of Connecticut State University, 850-Fed-70. And there, a tenured professor at Southern Connecticut State University was suspended without pay for failing to allow a formal classroom evaluation following complaints from students. That professor was provided with a letter that indicated that if he didn't let the evaluation occur, then he would be subject to discipline. He didn't let the evaluation occur, and he was then provided with a letter notifying him of his suspension because of that conduct. That letter also quoted from the collective bargaining agreement and informed the professor that he could contest the suspension through the grievance procedures beginning at step three, which was a hearing before the president of the school and the president of the union. The professor filed the grievance but then did not participate in the hearing and instead filed a lawsuit. This court affirmed the district court's granting of summary judgment on the due process claims. And in doing so, it held that the limited procedural rights guaranteed under the circumstances of that case were satisfied by the pre-deprivation notice and the hearing rights that were provided in the grievance procedures under the collective bargaining agreement. Again, that's exactly what Mr. Diffuser had here. He had the opportunity to respond to the charges against him in that latter mill hearing, but he chose not to do so. I feel I'm having difficulty understanding how he could have responded not knowing what evidence there was or even the work in North Stonington. Was that raised earlier? Was that even known earlier as part of the discussions? I mean, the record seems pretty full of discussions about daily worksheets and so on, but I didn't, I hadn't seen anything about his contemporaneous work in North Stonington. I'm having trouble understanding how he was supposed to prepare to defend. I mean, he can only be fired for cause and the latter mill says you have to have notice of the charges and the opportunity and knowledge of the evidence ahead of time. I'm having difficulty not even notwithstanding that they had been talking about many of these issues over time and particularly in contrast to the hearing that you all conducted before his suspension. This one seemed very hurriedly put together and having some difficulty understanding how he could have defended, but I take it your explanation is that he knew enough. Is that right? Essentially, yes, your honor. I would, and just again reiterate that latter mill does not require that the notice come before the latter mill hearing itself. The notice can come at the latter mill hearing and the Supreme Court has stated that due process requires or depends on the circumstances of the particular case and in this particular case, Mr. D'Souza was well aware of each of the issues that he was ultimately terminated for and that goes to the timekeeping records, it goes to his failure to perform inspections at the end of each day, his failure to complete the daily work report and as far as evidence, because he wasn't doing these things that were being requested of him by Mrs. McCrell, there was no evidence to provide to him. He knew that he wasn't doing them, so whether he had 20 minutes, a half hour or a month to prepare for the hearing, the bottom line is that he wasn't doing what Ms. McCrell was asking him to do, which resulted in him being terminated for that insubordination, that continued insubordination that existed well before his initial suspension. So your adversary points to certain affidavits obtained from co-workers like Mr. Santos about the catch basins and so on. Those weren't known to him ahead of time, were they? There were a couple of affidavits. There were affidavits that were obtained that were not part of his termination. As far as the affidavit from Mr. Santos, that related to work that was on Elmridge Road. Mr. D'Souza, when he returned from his suspension and his FMLA leave, Ms. McCrell had asked him to respond to a report from the town engineer regarding the work that was done on Elmridge Road, regarding the catch basins and the issues regarding those catch basins. Mr. D'Souza provided a written response, which is part of the court's record. He provided a written response to the issues related to the catch basins. He claimed that he wasn't really involved on that project. And the evidence just completely rebuts that and it goes to his lack of credibility. So again, there was nothing new that was being discussed or that Ms. McCrell wanted to discuss with him at the Loudermill hearing. Mr. D'Souza took it upon himself not to respond to any of the issues that she was raising. So she ultimately terminated him with the information that she had. Okay. Thank you. I think we have the argument. Mr. Fianco, you have two minutes of rebuttal. Thank you, Your Honor. What the town of Stonington, what the appellee has failed to demonstrate at any point during the briefing and certainly during argument is there's no explanation for the town withholding the memo that clearly there's certainly an inference can be drawn that the termination memorandum, which was handed to him a couple of hours after the meeting with Ms. McCrell, it was two pages, single space, was comprehensive in terms of charges. The privilege log certainly indicates that it was drafted earlier than the Loudermill. What the defendant appellee has failed to explain is why withhold that document from Mr. D'Souza. The purpose of withholding it was to deprive him of his full opportunity to know the charges and meaningfully participate in the hearing. As it was pointed out by Your Honor, there was an affidavit regarding Elm Ridge, which was used as a basis for the termination. Similar to Otero, those written on Mr. D'Souza, asking him tangentially about it, but not providing him as is required by due process with the specific charges and with the evidence that they had against him. In terms of the suspension, the court should note that when Mr. D'Souza was suspended for only five days and not terminated, the town provided him with a detailed memorandum of certain charges, 40 some odd pages of claimed evidence to support the suspension. Clearly, more is at stake with the termination. None of that was provided, as Your Honor pointed out. It was a very thin, rushed procedure with Ms. McCrell upon his termination when the town knew from prior experience how to properly give him notice and an opportunity to participate. It's not like the town was ignorant about that particular aspect. I would also point out there's been some talk about a record of time records being an issue. Ms. McCrell testified in no uncertain terms in her deposition and included in the record that the time issues were not a sufficient basis to terminate Mr. D'Souza's employment. Rather, it was the other evidence for which they provided no notice at that hearing, which were the major basis for the termination, the timekeeping alone. The timekeeping, I would also point out, was not a part of Mr. D'Souza's suspension in January of 2015 after a period of leave and then 20 days being back without ever being warned about timekeeping issues. It now became, to him, a reason for termination. Also... Even assuming he should have been given this letter you speak of by McCrell, the post-termination, extensive post-termination proceedings don't really wipe out his case here. Why didn't he get all the due process anybody could really have hoped for? I would answer that, Your Honor, by indicating that our circuit number one requires pre-deprivation notice and an opportunity to be heard unless an exception is triggered. There's no exception at issue in this particular case. I would agree with Your Honor that there were robust procedures afterwards, after it issued, but here's why it's so important. The termination was upheld, right? That is true, but it's not a part of the record, Your Honor. The result of the arbitration is not part of the summary judgment record in the trial court's decision. The trial court was called on to determine whether he was deprived of due process prior to the deprivation, but I did want to answer this because I think it's an important point. Just a minute. Isn't the practicality that if we were to vacate and send it back for a technical due process violation, the bottom line is that maybe he gets six cents for nominal damages and the net result is the same? I would disagree, Your Honor. I would disagree. I would disagree with that. The result does not if he's suffered a constitutional deprivation and a constitutional injury, there are damages that flow from that. The other important aspect that I just want to make sure I get out- What are they? The constitutional claims are not coextensive with his collective bargaining claims. He wasn't a party to the union arbitration. That's between the union and the town and it was adjudicated outside of his particular power. He brought constitutional claims separately, which he has a right to do, that are not coextensive with the underlying collective bargaining agreement. They're separate claims and that's why these are still presiding. The other issue, Your Honor- So your position is that he would get to re-litigate or to litigate in his case new, putting aside issues of virtual representation, the issue of whether there was cause for firing him at all? Absolutely. Absolutely. Let me ask you one thing. As I read Lordermill, your client was entitled to some kind of a hearing. He wasn't entitled to a bill of particulars. He wasn't entitled to formal charges. He wasn't entitled to pre-hearing discovery or anything of that sort. He was entitled to- simply entitled to some kind of hearing, which is what he got. Some kind of hearing, Your Honor, with respect has been determined in Otero. It's been described. Some kind of hearing requires notice of the specific charges against you, an explanation of the evidence, and a meaningful opportunity to participate. So while I understand that the defendant has utilized that language, he just needs something, some kind of hearing. That's actually been articulated specifically in this circuit by Otero. And I just wanted to get one point out in response to Your Honor's previous question. When the termination occurs, pre-deprivation is so important because when the termination occurs, it is an ultimate uphill battle to recover from that. You become stigmatized even, not just to the public, but with your co-workers. So then a double-digit year, 12-year employee, five and a half years, no discipline, now becomes the fired employee. And there's no incentive for his former co-workers to have his back under those circumstances. Rather, they're going to galvanize around the municipality. And once that occurs, the power dynamic has name-clearing hearing simply can never substitute because your chance to head this off has to occur before termination. Okay, I think we have the arguments. Thank you very much. We will reserve decision. Thank you, Your Honor. Thank you for the opportunity, Your Honors.